RHODA GILLILAND, APPELLEE, v. CITY OF OMAHA, APPELLANT.

FILED JUNE 26, 1911. No. 16,385.

1. **Municipal Corporations:** SIDEWALKS: NEGLIGENCE. The existence of a step of about eight inches at the intersection of a crosswalk, which was safe and in good repair, with a sidewalk, which was also in good condition, does not of itself constitute actionable negligence.

2. ———: ———: ———. A city is not liable to one who is familiar with the crossing, and who on a rainy evening, on account of the wet and slippery condition of a sound cross-walk, slipped in stepping a distance of about eight inches from the cross-walk to an intersecting sidewalk, which was also in good repair.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed.*

*Harry E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*John T. Cathers, contra.*

LETTON, J.

In May, 1908, at the intersection of Pinkney and Twenty-eighth streets, in the city of Omaha, the plaintiff slipped and fell, causing a Colles fracture of her right arm. At the place of the accident there was a wooden cross-walk, extending across Pinkney street, laid upon the natural surface of the ground. Some months previous to this a permanent sidewalk had been laid along the south side of Pinkney street upon the established grade. In order to lay this, it became necessary to excavate to a depth of from 12 to 14 inches at the point where the cross-walk and permanent walk intersected. After the bed for the walk had been prepared and the brick laid, a difference of level existed between the top of the brick walk and the surface of the wooden cross-walk.

The plaintiff testifies that the surface of the cross-walk was about 8 to 10 inches higher than that of the sidewalk, while other witnesses estimate the distance in height at from 6 to 14 inches. In her notice to the city made a few days after the accident the plaintiff states that the difference in height is about 8 inches. A photograph taken a few days after the accident was received in evidence on behalf of the plaintiff, in which the end of the cross-walk is shown, as well as the top of the brick walk. Judging from this photograph, it would seem that the statement of the

plaintiff is correct, and that the height of the step from the brick walk to the cross-walk was about 8 inches at the time of the accident.

The allegations of negligence in the petition are, in substance, that the defendant laid a wooden cross-walk over Pinkney street on the west side of Twenty-eighth street; that this "was carelessly and negligently constructed several inches higher than the established grade of said street at said place, * * * said wooden cross-walk has been carelessly and negligently permitted to remain ever since in said faulty and dangerous condition; * * * that the defendant * * * in building and constructing said wooden cross-walk over and across Pinkney street above the established grade of said street, and leaving and permitting the same to remain (above the brick sidewalk at the south end thereof) in said dangerous and faulty condition, is guilty of gross carelessness and negligence." "It was the duty of the defendant to build and construct said cross-walk in a suitable and safe way, to keep and maintain it in such condition that it be reasonably safe for persons crossing over and along the same in the nighttime, and the defendant by reason of the faulty construction and dangerous condition of said cross-walk, to wit, being higher than the brick walk at their junction and which caused the plaintiff to fall and break her wrist, is liable to the plaintiff in damages," etc. Defendant filed what is substantially a general denial, and further denied that notice of the existence of the claimed defect had been given to the city the statutory length of time before the accident. The plaintiff recovered a judgment, from which the city appeals.

The evidence shows that pursuant to an order of the city council the owner of the abutting property caused the walk to be built at the place staked out by the city engineer. The natural soil in that locality consists of a stiff clay locally known as "gumbo," which, when wet, becomes very adhesive and slippery. The surface of the street being higher than the walk, in rainy weather water flowed

into the slight excavation, and the surface of the brick walk became covered with mud. This, however, is immaterial, since the plaintiff testifies that she did not slip upon the brick sidewalk. Her testimony as to the accident is that between 7 and 8 o'clock on the evening of May 4 she went to visit her son, who lived in the neighborhood; that in doing this she passed over this crossing. The night was cloudy. She stayed at her son's about an hour. When she came back, it was raining, and the walks were wet and slippery. She was well acquainted with the walk in that locality, being in the habit of passing over it several times a day. That the cross-walk was 8 to 10 inches higher than the sidewalk, though she had never measured it; that a street lamp which stood across the street was lighted, but the light was somewhat obstructed by a tree.

On cross-examination she testified: "Q. Now, when you came back that night, you walked in what direction? A. I walked south. Q. South? A. Yes, sir. Q. Looking out for this step-off? A. Yes, sir; I was looking out for the walk. It was slippery—the sidewalk, the crossing. Q. And you stepped from the cross-walk on the permanent brick walk. Is that right? A. As I stepped off of the cross-walk, my feet slipped and I fell over to the right. Q. Well, did your feet slip from the mud on the cross-walk or on the permanent walk? A. No, sir, didn't slip from the permanent walk, I slipped before I struck the permanent walk."

It is apparent that the accident was caused by the fact that the cross-walk was wet and slippery. So far as the evidence shows, both the cross-walk and the sidewalk were in perfect condition. The question presented is whether the city is in any event liable for damages to a foot passenger merely because there is a slight difference in level between a cross-walk and sidewalk, and the surface of the cross-walk is wet and slippery from recent rain. It would be imposing an unwarranted burden upon a city to require that all cross-walks and sidewalks for foot passengers should be constructed either upon a level or upon a uni-

form slope, and without steps, at the points where they intersect each other or reach the level of the drive-way. Moreover, if the court should hold that a difference of 8 to 10 inches in passing from a cross-walk to a sidewalk or from the level of a paved street to the edge of the curb constituted such a negligent manner of construction that the city would be liable for damages every time a person slipped in stepping up or down, this would certainly be laying an extraordinary and unjust tax upon the inhabitants of the city.

In the case at bar the plaintiff was thoroughly familiar with the conditions at this crossing. She knew that at the end of the walk there was a slight step. She says her foot slipped upon the cross-walk, but the cross-walk was not defective. The only negligence charged in the petition which is supported by the evidence is that the walks differed in level, and this we should be reluctant to hold constituted actionable negligence. The evidence shows that the city was engaged in the gradual improvement of this street; that more than a year before there were wooden sidewalks lying upon the natural surface of the ground, and that the city shortly afterwards graded the street. Suppose that in grading the roadway the street was left as far below the level of the sidewalk as the sidewalk at this time was below the cross-walk, could the existence of this step be said to be negligence? We think not.

The city was chargeable with the exercise of reasonable care as to the manner of the construction and connection of the walks, and the existence of the step was not incompatible with the existence of such care. The wet and slippery condition of the walk was not the fault of the city, but a condition which was to be expected under all the circumstances, and greater care on the part of a pedestrian should have been exercised on account of it. Differences of level are to be expected between sidewalks and crosswalks, and care is always necessary at such intersections. This is especially so in wet weather. We think the city is not liable under the proof. This is the view of courts

generally. *City of Chicago v. Bixby*, 84 Ill. 82, 25 Am. Rep. 429; *Morgan v. Lewiston*, 91 Me. 566; *Teager v. Flemingsburg*, 109 Ky. 746, 53 L. R. A. 791; *Shippy v. Village of Au Sable*, 65 Mich. 494; *Miller v. City of St. Paul*, 38 Minn. 134; *Robinson v. City of Omaha*, 84 Neb. 642.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

SEDGWICK, J., took no part in the decision.