## Gower v. City of Madisonville.

(Decided November 15, 1918.)

### Appeal from Hopkins Circuit Court.

1. Municipal Corporations—Street Improvement—Discretion.—Municipalities are allowed a broad discretion as to the character of improvement of a street or pavement to be made, when and where it shall be made, and the material out of which it shall be constructed.

2. Municipal Corporations—Street Improvement.—The legislative body of a municipality may adopt plans of street and pavement improvement and cause the same to be constructed in accordance therewith and not become responsible for personal injury to pedestrians falling thereon, if the plan adopted and carried out is not palpably or obviously unsafe for travelers.

3. Municipal Corporations—Street Improvement.—While a municipality is bound to maintain its streets and sidewalks in a reasonably safe condition for the travel of the public, yet if the improvement be made according to a plan that reasonably prudent persons would consider safe, the city is not liable for injury to travelers which results from the use of such street or pavement.

4. Municipal Corporations—Construction of Sidewalks.—In the construction of sidewalks a city may conform to the natural surface of the ground, or may where necessary, construct a step or slope which is not inherently dangerous, and not be responsible for injury resulting to travelers.

5 Municipal Corporations—Sidewalks.—A slope which falls seven inches in four feet in a sidewalk at a street crossing is not so

palpably dangerous or unsafe as will render the city liable for injury to one falling thereon, unless the sidewalk when completed was so slick or otherwise inherently dangerous as to impress the mind of a reasonably prudent person that it was not reasonably safe.

6.  Municipal Corporations—Sidewalks—Personal Injuries.—The mere fact that a pavement which is constructed in accordance with a plan that is reasonably safe, and of materials suited to the purpose becomes dangerous when covered with ice, does not necessarily render the city liable for personal injury occasioned by pedestrians falling thereon.

GORDON, GORDON & MOORE and THOMAS E. FINLEY for appellant.

LAFFOON & WADDILL and J. W. POWELL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted by Mrs. Gower against the city of Madisonville, to recover damages for personal injuries which she alleges she sustained by slipping and falling upon a pavement which was constructed and maintained by the city along one of its chief thoroughfares. Madisonville is a city of the fourth class. By the petition it is alleged that the city undertook to improve the sidewalks on the west side of Main street at the point named, which was in the business center and most populous part of the city, and did the work so negligently and carelessly that the pavement from the beginning was inherently dangerous and unsafe; and further the city failed to use "ordinary and reasonable judgment to so design and construct the side walkway as to make the same reasonably safe for persons using the same as a walkway; and, further, that the city negligently constructed the sidewalk in an unusual and unnecessary manner, from which injury to persons might have been reasonably anticipated;" that the said sidewalk was built upon an incline at the place in question, and, "that the said incline is so steep as to make the said sidewalk, when wet by the rains or when covered by snow or ice inherently dangerous to pedestrians."

And in the third paragraph it is alleged that the said city built the sidewalk with some concrete substance or cement upon an incline of such a degree that when rain or snow would fall upon the same, or the same would become covered with snow or ice, by the actions of the ele-

ments, that the said sidewalk would become dangerous and unsafe for pedestrians.''

In substance, the petition charges that the plan adopted by the city for the construction of the sidewalk was obviously and inherently dangerous, and that when the sidewalk so constructed was wet or covered with ice and snow, it was slick and dangerous and these facts were known to the city long before the accident and injury to the plaintiff.

The allegations of the petition were traversed by the answer, and in the second paragraph the defendant city pleaded contributory negligence.

Upon a trial before a jury the plaintiff introduced evidence showing that the pavement in question is at the intersection of Main street and Bishop avenue, and runs parallel with Main street; that in driving from Main street into Bishop avenue it was necessary to cross the pavement or walkway, and as the two streets were lower than the pavement it was necessary to and the city did lower the walkway or crossing in question about seven inches below the surface of the walkway on either side of Bishop avenue. This was done by making an incline on either side four feet wide. In other words, the drop of seven inches in the walk was accomplished by an incline, four feet long on either side of Bishop avenue. The pavement was made of concrete of the ordinary type and of the same character and material as the sidewalk along that part of Main street. Two pictures are introduced in evidence and made a part of this record, showing the nature, character and contour of the premises. There is no dispute that Mrs. Gower slipped and fell upon the pavement and broke her arm from which she suffered pain, but it is contended that there is no liability on the part of the city, it being urged that the city, in the exercise of its governmental functions, may in the discretion of its legislative body, adopt a plan of street or pavement improvement and cause the construction thereof, and not become responsible for personal injury occurring in the manner herein set forth, if the plan adopted by the city and carried out is not palpably or obviously unsafe to travelers. In other words, the city insists that when the plan adopted for the improvement of a sidewalk or street is such as many prudent men might approve, or when it would be so doubtful upon the

facts whether the pavement, as planned or ordered by the city governing board, was dangerous or unsafe or not that different minds might entertain different opinions in respect thereto—the benefit of the doubt should be given to the city and it should not be held liable.  So it is written in Teager v. City of Flemingsburg, 109 Ky. 746, and other cases there cited.  In that case it is further held that the city is not bound to maintain an even or perfect grade of its streets and pavements.  In the course of the opinion it is said, "It may frequently be, and we know it is sometimes necessary to break the angle of sidewalk grades by steps.  The determination of the necessity and the plan should be left to the discretion of the governing or legislative body of the city, subject to control in cases of such manifest error or mistake as would indicate a failure to consider or a purpose to misconstruct the work."

Under the rule adopted in this state, municipalities are allowed a broad discretion as to the character of the street improvement to be made, when and where it shall be made, and the material out of which it shall be constructed, and when the city adopts a plan or determines the character of construction of a sidewalk, or other public way, it will not be liable for injuries resulting from a dangerous or defective condition due solely to a mistake of judgment in the plan or construction adopted, and this rule is not limited to cases where the plan adopted was determined in advance, but applies equally where it was ratified and adopted by the municipality after the work was constructed; unless the improvement, when made according to the plan, was obviously or palpably unsafe and dangerous for the use for which it was intended. While the city is under the duty to keep its streets in a reasonably safe condition for public travel, it is not an insurer of the safety of travelers.  A sidewalk constructed according to a plan adopted by the municipality and which, by its legislative body was considered reasonably safe, may not become the basis for an action for damages on account of personal injuries received by pedestrians slipping and falling thereon, unless after the walk was completed in accordance with the plan adopted, it was so  obviously or palpably dangerous as to impress the mind of a reasonably prudent person as unsafe, or as said, in the case' of  Clay City v. Abner, 82 S.

W. 276, "it was so obviously dangerous as to show a failure to consider or purpose to misconstruct the work." In the recent case of City of Lebanon v. Graves, 178 Ky. 749, it is held that the city was under a duty to keep its streets in reasonably safe condition for public travel, and if pursuant to the plan adopted by the city, it so constructs them in the first instance that they are not reasonably safe for public travel, but on the contrary are unsafe and dangerous, its liability will be the same as if, after the street construction, it had permitted them to become unsafe and dangerous for public travel, or had allowed them to get in a condition not reasonably safe for travel. In that case it was further held that it made little or no difference whether the dangerous condition of the street was due to the defective plans or due to conditions that the city permitted after the construction of the street pursuant to a plan, and that when a city undertakes to construct or reconstruct the street or pavement, it is under a duty to do so in a way to be reasonably safe for public travel, and that this duty is a continuing one and no plan will justify the construction of a pavement so slick and slippery as to be unsafe and dangerous.

The appellant, Mrs. Gower, complains of a peremptory instruction given by the court to the jury, directing it to find and return a verdict for the defendant city. This ruling of the court was correct in view of the authorities, unless the walk at the point in question was obviously dangerous and unsafe, or the plan adopted for its construction by the city was palpably unsafe or dangerous. While there is some evidence that pedestrians had fallen at this point before the injury of Mrs. Gower and that certain city officials knew of this, yet the whole evidence considered together proves that the sidewalk was constructed in the usual and ordinary way at street crossings, and of the material generally employed for such purposes, and could not be found as a matter of law to be palpably dangerous or unsafe. The slope was about four feet long and the lower end was about seven inches below the top of the slope. This incline was made necessary by the street crossing. The pavement was not so slick or steep as to be obviously dangerous in itself, but when it became covered with ice and thus made slick, it was less safe for pedestrians. It was so covered at the

time of the fall of Mrs. Gower and but for the ice on the pavement the accident would not have happened. A municipality is not liable for injury resulting from the natural accumulation of snow and ice on its pavements unless it amounts to an obstruction, or it has undertaken to remove the same and has done so in an imprudent or imperfect manner. The plan adopted by the city con- formed to the surface of the ground at that point and, was not a plan which prudent men would not under sim- ilar circumstances have adopted. It follows that the trial court did not err in peremptorily instructing the jury to find and return a verdict for the city.

Judgment affirmed.