## City of Louisville v. Redmon.
(Decided June 9, 1936.)

GAVIN H. COCHRAN for appellant.

EDRINGTON & REDMON and WOODWARD, DAWSON & HOB-SON for apellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Nettie C. Redmon claims that "she was proceeding in her automobile driven by her brother, in an eastwardly direction along Market Street, a dedicated and much traveled public thoroughfare in the city of Louisville, at or near a viaduct or underpass in the street, between 32nd and 30th Streets, when it struck a hole, trough, depression or obstruction in the street, which caused her automobile to bounce, jerk, lurch and be precipitated into a wall made of concrete bricks and stone, which separates the street car traffic on one side of the street from the automobile traffic on the other, and she was thereby severely and permanently injured about the head, face, nose, eyes, lips, mouth, left ankle and body, and suffered great shock to her nerves and nervous system," to her damage in the sum of $10,000, which she sought to recover of the city of Louisville, Kentucky & Indiana Terminal Railway Company, and Louisville Railway Company.

The Kentucky & Indiana Terminal Railway Company and the Louisville Railway Company went out of the case, leaving the city of Louisville the sole defendant, against which on a verdict of the jury a judgment was rendered for $1,930.

The city traversed her petition as amended and pleaded contributory negligence of Nettie C. Redmon and the driver of the automobile. It also pleaded that the negligence of the driver of the automobile was the sole cause of her injuries, the existence of which it still denied. It further pleaded that the street and under-pass, or viaduct, described in her petition as amended, were, and each of them was, constructed according to a plan and specifications, adopted by appropriate ordinances in the exercise of its governmental discretion; and that they were, and each of them was, constructed and maintained by the city, "in accordance with said plan and specifications, without negligence."

Her second amended and substituted petition contains this language:

"The defendant, city of Louisville planned and * * * adopted said plan of construction of said street, viaduct or underpass and was negligent in the construction and maintenance thereof as aforesaid and said negligence concurred and caused to bring about the injuries and damages as aforesaid."

This excerpt from her pleading is substantially the language of one paragraph of the city's answer, and thus their pleadings narrow the issue, to be determined, to the question whether "the construction of the street and underpass or viaduct were negligently constructed or negligently maintained," and "that such negligent construction or maintenance concurred and caused to bring about her injuries."

In other words, she and the city by their pleadings substantially agree that the only negligence for which the city may be liable consists of acts of either misfeasance or nonfeasance. The former includes faulty construction of the street and underpass or viaduct, so as to render the same dangerous for travel by motor vehicles; while the latter consists of a failure to repair the street and underpass or viaduct after construction, after becoming unsafe and the city had either actual or constructive notice of the defect for a reasonable time.

The evidence adduced establishes that she was traveling east on Market street in an automobile owned by her and driven by a brother, about midnight on August 23, 1933, and as the automobile approached the viaduct, it struck a depression which was a drain with

a catch basin constructed as a part of, and in the street for about forty feet before it reached an abutment supporting a railroad track over the viaduct, causing the driver to lose control of the automobile and to crash into "the viaduct abutment." Evidence was directed to the light at the abutment near or about the depression, or the drain with a catch basin—between the driveway and the street car track. The evidence in respect of the light is confusing if not conflicting, but according to our view of the case, the presence or the absence of the light thereat becomes immaterial.

The evidence of the city uncontradictedly establishes that the plan and specifications of the street and underpass or viaduct and depression, or the drain with the catch basin, were prepared by skilled, trained, and experienced engineers, in accordance with the universally adopted and approved plan and specifications of like streets and underpasses or viaducts, and depressions or drains with catch basins, presented to, and adopted by, the city's legislative body about twenty-five years before the happening of the accident in which Mrs. Redmon was injured, and that the street, viaduct, drain, and catch basin were constructed in accordance with such plan and specification, and maintained up to the time of her injuries, in the identical condition in which they were originally constructed. It was neither alleged, nor attempted to be proven, that there was any alteration, or change, from wear, injury, or otherwise, in the condition of the street and underpass or viaduct, and the depression or drain and catch basin, from that in which they were originally constructed.

Hence this is not a case where a street and underpass or viaduct and the depression or drain and catch basin were properly constructed, and thereafter by reason of wear, injury, or otherwise, had become defective or unsafe. If Mrs. Redmon had a cause of action, it must be because the plan and specifications of construction of the street and underpass or viaduct and depression or drain and catch basin rendered the street dangerous. Her right to recover and the city's liability to her are governed by the principles stated in Teager v. City of Flemingsburg, 109 Ky. 746, 60 S. W. 718, 22 Ky. Law Rep. 1442, 53 L. R. A. 791, 95 Am. St. Rep. 400; Carroll's Adm'r v. City of Louisville, 117 Ky. 758, 78 S. W. 1117, 1119, 25 Ky. Law Rep. 1888; Clay City v. Abner, 82 S. W. 276, 26 Ky. Law Rep. 602; McCourt v. City of

Covington, 143 Ky. 484, 136 S. W. 910; Tudor v. City of Louisville, 172 Ky. 429, 189 S. W. 456; Pugh v. City of Catlettsburg, 214 Ky. 312, 283 S. W. 89, 91, 46 A. L. R. 939; City of Pikeville v. Williams, 213 Ky. 52, 280 S. W. 467, 469. And not by those applied in City of Louisville v. Lenehan, 149 Ky. 537, 149 S. W. 932, Ann. Cas. 1914B, 164; City of Ashland v. Boggs, 161 Ky. 728, 171 S. W. 461, Ann. Cas. 1916B, 1005; Bosler Hotel Co. v. Speed, 167 Ky. 800, 181 S. W. 645; City of Carlisle v. Secrest, 75 S. W. 268, 25 Ky. Law Rep. 336; City of Newport v. Zimmermann, 152 Ky. 582, 153 S. W. 969; City of Louisville v. Hale's Adm'r, 238 Ky. 182, 37 S. W. (2d) 20, and cases cited.

There being no evidence tending to establish that since the adoption of the plan of construction of the street and underpass or viaduct, and the depression or drain and catch basin, and their construction in accordance therewith, they have become defective or unsafe for travel by motorists, from any cause, the latter cases are inapplicable in the present one. The facts in those cases distinguish them from this one.

"We understand the rule to be that it is for the town council to determine whether a public way shall be improved at all, and, if it is, the manner and extent of it. They are selected particularly with reference to their fitness and interest in such matters. Unless the plan that they adopted is one so obviously dangerous as would show a failure to consider or a purpose to misconstruct the work, the judgment of the governing body of the town as to the plan is conclusive. The town is not liable in damages for accidents that may occur on the highway because the very best plan, or even a better one in view of the jury, was not adopted. A municipality is in no sense a guarantor of the safety of the traveler upon its highways. The corporate authority is only bound to use reasonable skill and diligence in making the streets and sidewalks safe and convenient for traveling." Pugh v. City of Catlettsburg, supra; see City of Pikeville v. Williams; McCourt v. City of Covington and Carroll's Adm'r v. City of Louisville, supra; City of Louisville v. Uebelhor, 142 Ky. 151, 134 S. W. 152; Breckman v. City of Covington, 143 Ky. 444, 136 S. W. 865.

In the Carroll Case, the plaintiff's decedent was killed by his horse slipping and falling while he was riding over the railroad crossing in the city of Louisville

at the intersection of Third and A streets. That crossing had been constructed by placing steel rails parallel, about three inches apart, and filling in between them with cement and concrete. The rails were not covered with either cement or concrete, and it was charged that the tops of the rails were slick and caused the decedent's horse to slip and fall. In denying the right of the plaintiff to recover, and after stating that city could not construct its streets or sidewalks in accordance with a plan, which would be "palpably unsafe to travel," we said:

> "But when the plan is one that many prudent men might approve, or where it would be so doubtful upon the facts whether the street, as planned or ordered by the city governing board, was dangerous or unsafe or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt should be given the city, and it should not be held liable."

Mrs. Redmon's complaint really amounts to this: That the city is liable to her because it has not since the days of increased automobile traffic adopted a new or another plan for the construction of the street and underpass or viaduct, and drain and catch basin, conformable to a more modern plan, her cause of action is governed by that line of cases that fastens upon a municipality liability for an omission to repair the unsafe condition of a street after it has had either actual or constructive knowledge of the defect.

Such is not the law. On the contrary, the city is only required to use reasonable care to construct and maintain its highways so as to make them reasonably safe for travel, and as in this case the street and underpass or viaduct and drain with catch basin were not negligently constructed, and have not become defective from wear or injury or other cause, but remain in the identical condition in which the same were constructed, the propriety of reconstructing the same must be left to the discretion of the governing authority of the city, giving the benefit of the doubt to the city.

It is patent if it were a rule that a motorist who is injured while traveling a street is entitled to have his case submitted to and determined by a jury, if in the opinion of witnesses the accident in which he had sustained his injuries would not have happened if the street, though it was neither negligently constructed nor negli-

gently maintained, had been reconstructed in accordance with a new or more modern plan, it would be equivalent to allowing the jury to exercise the legal discretion, instead of the city authority, to decide the necessity and propriety of a reconstruction of the street, which is not permissible.

It is our conclusion on the developed facts that under the rules as stated above, the city was not liable for the unfortunate injuries Mrs. Redmon sustained, and the court should have peremptorily instructed the jury to find for the city as it requested. "For its failure so to do, its judgment must be reversed, with instructions to grant the appellant a new trial in conformity to this opinion." City of Pikeville v. Williams, supra.

Whole court sitting.